**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| **JOSEPH NEWTON,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | **No. 3:18-cv-00431** |
| **v.** | ) | **Judge Trauger** |
| | ) | |
| **SHAWN PHILLIPS, Warden,** | ) | |
| | ) | |
| **Respondent.** | ) | |

## MEMORANDUM

Pending before the court is  Joseph Newton's pro se petition under 28 U.S.C. § 2254 for a writ of habeas corpus challenging his 2012 conviction for two counts of rape.  Newton is an inmate at the Northwest Correctional Complex in Tiptonville, Tennessee, where he currently is serving a sentence of eight years' imprisonment in the Tennessee Department of Correction.  (Doc. No. 1).

The respondent has responded to the petition  (Doc. No. 16), and the petitioner has replied to the respondent's answer (Doc. No. 22).  The petition is ripe for review, and this court has jurisdiction pursuant to 28 U.S.C. § 2241(d).  Having fully considered the record, the court finds that an evidentiary hearing is not needed, and the petitioner is not entitled to relief.  The petition therefore will be denied and this action will be dismissed.

## I.     Procedural History

On September 12, 2012, a Davidson County jury convicted the petitioner of two counts of rape.  The trial court imposed an eight-year sentence.  (Doc. No. 1 at 1).

The Tennessee Court of Criminal Appeals affirmed the petitioner's convictions and sentence. *State v. Newton*, No. M2014-00603-CCA-R3-CD, 2015 WL 1543386 (Tenn. Ct. Crim. App. Apr. 2, 2015), *perm. app. denied* (Tenn. July 17, 2015).  The Tennessee Supreme Court

denied the petitioner's application for discretionary review on June 6, 2018. *Id.* The petitioner did not seek a petition for writ of certiorari from the United States Supreme Court.

On September 4, 2015, the petitioner filed a timely, pro se petition for post-conviction relief. (Doc. No. 15, Attach. 12 at 23-43). On July 15, 2016, the petitioner filed an amended petition through counsel. (*Id*. at 55-71) Following an evidentiary hearing, the post-conviction court denied relief on October 4, 2016. (*Id*. at 75-82). On November 29, 2017, the Tennessee Court of Criminal Appeals affirmed the judgment of the post-conviction court. *Newton v. State*, No. M2016-02240-CCA-R3-PC, 2017 WL 5901032 (Tenn. Crim. App. Nov. 29, 2017), *perm. app. denied* (Tenn. Mar. 14, 2018). The Tennessee Supreme Court denied the petitioner's application for discretionary review on March 14, 2018. *Id*.

On May 1, 2018,[1] the petitioner filed the instant pro se petition for writ of habeas corpus. (Doc. No. 1 at 16). By order entered on August 10, 2018, the court directed the respondent to file an answer, plead or otherwise respond to the petition in conformance with Habeas Rule 5. (Doc. No. 10). The respondent filed his response on November 21, 2018, conceding that the petition is timely and urging the court to dismiss the petition. (Doc. No. 16 at 2).

The petitioner asserts seven claims for relief:

Claim 1: Petitioner was denied effective assistance of counsel when successor counsel[2] failed to call him to testify at the motion for new trial hearing;

---

[1] Under the "prison mailbox rule" of *Houston v. Lack*, 487 U.S. 266, 270 (1988), and the Sixth Circuit's subsequent extension of that rule in *Richard v. Ray*, 290 F.3d 810, 812 (6th Cir. 2002) and *Scott v. Evans*, 116 Fed. App'x 699, 701 (6th Cir. 2004), a prisoner's legal mail is considered "filed" when he deposits his mail in the prison mail system to be forwarded to the Clerk of Court. Pursuant to this authority, the court finds that the petitioner filed his petition on May 1, 2018, the date he signed the petition (Doc. No. 1 at 16), even though the Clerk of Court received and docketed the petition on May 7, 2017. Throughout this Memorandum, all dates as they pertain to the federal filings of the petitioner will reflect the court's application of the prison mailbox rule.

[2] After his conviction and sentencing, the petitioner retained two new attorneys, one of whom represented him after sentencing and through the hearing on the motion for a new trial ("successor counsel") and one of whom also represented him on appeal ("appellate counsel"). The court will use these terms, in addition to "trial counsel," throughout this opinion for ease of reference.

Claim 2: Petitioner was denied effective assistance of counsel when trial and successor counsel failed to interview and call certain witnesses to testify at the trial and the motion for new trial hearing;

Claim 3: Petitioner was denied effective assistance of counsel at his motion for new trial hearing because successor counsel raised ineffective assistance of counsel claims at the motion for new trial hearing and on direct appeal;

Claim 4: Petitioner was denied effective assistance of counsel when appellate counsel failed to raise a sufficiency of evidence claim on direct appeal;

Claim 5: Petitioner was denied effective assistance of counsel when appellate counsel failed to cite legal authority in support of his argument that trial counsel's closing argument was prejudicial;

Claim 6: Petitioner was denied effective assistance of counsel when appellate counsel failed to raise the issue of sentencing on direct appeal; and

Claim 7: Petitioner was denied due process of law by the cumulative effect of the errors at trial.

## III.     Summary of the Evidence

### A.     Trial Proceedings

The Tennessee Court of Criminal Appeals summarized the proof adduced at the defendant's trial as follows:

> The victim testified that on November 17, 2009, she attended a work-related dinner, where she consumed several alcoholic drinks. She subsequently drove her vehicle to several different bars and continued to consume alcohol. The last bar that she visited was Broadway Brewhouse, located at the corner of 19th Avenue and Broadway in Nashville. When the bar closed at 3:00 a.m., several bar employees and the victim mutually agreed that the victim should depart in a taxi.

Douglas Tribble was working as a barback at Broadway Brewhouse and remembered having a conversation with the victim. Mr. Tribble became concerned that the victim may have consumed too much alcohol, and he spoke with his manager about placing her in a taxi. Mr. Tribble explained to the victim that he did not believe it was a good idea for her to operate her vehicle, and the victim agreed. Mr. Tribble exited the bar with the victim to assist her in hailing a cab. He recalled that he flagged down a white Allied taxi that was operated by a black male. He could not see the driver's face in detail because it was dark and the taxi was across the street, but he made a notation that the taxi's number was either "70, 71, or 77."

Mr. Tribble testified that it was his habit always to note the number of a cab if he placed a person into the cab. He began this practice after an incident that occurred many years earlier with a co-worker. Mr. Tribble placed his co-worker in a cab and learned the next day that the driver had assaulted the co-worker, stolen her money, "and then left her on the side of the road for dead." After the incident, Mr. Tribble promised himself "that if anytime [he] ever put somebody in a cab, [he] would always remember the number of the cab."

When the victim entered the taxi, she informed the driver that she wished to go to "Belmont off of 18th Avenue." The taxi started in that direction, but when the victim asked the driver to turn left on Magnolia, the cab continued straight instead of turning. Initially, the victim believed that the driver had simply missed the turn and would turn around to take her to her destination. However, the driver turned to her and told her to "shut up."

After continuing to drive, the driver "whipped into a cul-de-sac." He climbed into the backseat of the taxi and forced himself on the victim. He pulled down the victim's pants and underwear and penetrated her vagina with his penis. The victim did not consent to this action, and she was fearful while it was happening. The victim believed that the assault lasted "maybe 10 minutes or 15 minutes, five minutes" but stated that "[i]t felt like two hours[.]"

The defendant returned to the driver's seat of the taxi after penetrating the victim. The victim immediately exited the taxi, running "as fast as [her] legs would take [her]." She purposefully left the door of the taxi open to slow the driver down, in case he attempted to pursue her. The victim ran into a well-lit area of "an apartment or condo community" and telephoned police.

Officer Paul Goebel of the Metropolitan Nashville Police Department responded to the victim's call. He testified that he arrived at the apartment complex around 4:00 a.m. and that the victim informed him that she had been attacked a short distance from the apartment complex. Officer Goebel noted that the victim appeared to be intoxicated but stated that she was able to articulate what had occurred. He testified that the victim never attempted to conceal the fact that she was intoxicated. The victim told him that a black male between the ages of twenty-seven and thirty-two years old attacked her. After speaking with the victim for a few moments, Officer

Goebel transported her to General Hospital, where a nurse practitioner performed a "Medical/Legal Examination" and a rape kit.

Connie Lynn Barrow was the nurse practitioner who was on call for the Sexual Assault/Victim Response Team when the victim came to General Hospital. She testified that as part of her duties, she took the medical forensic health history of the victim, performed a "head to toe physical assessment," examined the victim for trauma, and collected any evidence that she "deem[ed] to be appropriate." Ms. Barrow observed a small, "slightly purple" bruise on the victim's right breast and a "small reddened abrasion" on the victim's right knee. She asked the victim if her assailant had kissed her anywhere, and the victim responded that he may have attempted to kiss her on her breast and mouth. Ms. Barrow administered swabs to the victim's mouth and face in order to detect any potential saliva left by the attacker. She performed a swab of the outside and inside of the victim's vagina to check for semen, along with a cervical swab of her vagina and a swab around her anus. Ms. Barrow also performed a "cervical culture checking" for gonorrhea, and she treated the victim for gonorrhea.

Detective Robert Carrigan, a Metropolitan Nashville police officer, worked in the Sex Crimes Division. He testified that he arrived at the hospital after the victim was transported and that he spoke with her before Ms. Barrow conducted her examination. He observed that the victim "appeared extremely intoxicated" and had trouble remaining awake. Detective Carrigan noted that "[i]t was just a difficult time for an interview." In this first interview, the victim described her assailant as a black male with medium skin tone. In a subsequent interview several days later, the victim described her attacker as a "[l]ight skinned male black." The only variation in the two interviews of the description of her attacker was his skin tone. He spoke with her several days later, when she was far more "lucid."

Detective Carrigan testified that the swabs taken from the victim were sent to the Tennessee Bureau of Investigation (TBI) crime lab for analysis. Semen was discovered on the vaginal and peri-anal swabs, but the DNA profile did not reveal a match with anyone currently in the TBI system. After speaking with the manager on duty at Broadway Brewhouse the evening of the incident and with Mr. Tribble, Detective Carrigan began to develop the drivers of Allied taxi cabs 70, 71, and 77 as potential suspects. The defendant was the driver of cab number 70. Detective Carrigan spoke with all three drivers, and all three agreed to provide a consensual DNA swab. When Detective Carrigan showed the defendant a photograph of the victim, he denied having ever seen, met, picked up, or provided a ride to the victim. He also denied ever having a sexual relationship with anyone inside of his taxi.

Detective Carrigan sent the DNA swabs of the three drivers to the TBI laboratory, and testing revealed a positive match between the semen found in the swabs taken from the victim and the defendant's DNA profile. Several days after learning of this match, Detective Carrigan showed the victim a photograph lineup that included a photograph of the defendant. He had shown the victim several prior lineups of

Allied taxi cab drivers, but the victim did not select any of the men in the photographs as her attacker. After viewing the lineup with the defendant's photograph, the victim selected that photograph, stating that she was "70% sure" that it was a photograph of her attacker. She clarified that seventy percent sure meant "that [she] was pretty darn sure."

Special Agent Bradley Everett worked for the TBI Crime Laboratory as a special agent forensic scientist and DNA technical leader for the TBI. After receiving the defendant's DNA swab, Special Agent Everett found that the defendant's DNA profile matched that of the sperm found in the swabs taken from the victim. He testified that the probability of an individual other than the defendant having that DNA profile was greater than the world population. He further opined that "it would be scientifically unreasonable to assume" that the DNA profile did not come from the defendant.

The defense did not put on any proof. Although trial counsel informed the jury in his opening statement that the defendant would testify, the defendant did not do so. Trial counsel began his closing argument by stating that he "would submit that in the absence of DNA in this case, this case would be a loser." He further told the jury, "I told you in opening statements that [the defendant] was going to testify. Typically in law school they tell you not to tell the jury what they can expect to hear, but this was a [tactical] decision so if you're going to blame anybody blame me, just don't hold it against [the defendant.]" Trial counsel also stated, "This is an identity case. There was a rape and there was no consent, that is not even an issue. There was a rape but the issue is identity."

At the conclusion of the proof, the jury found the defendant guilty of two counts of rape. The trial court merged both counts and sentenced the defendant to an eight-year sentence.

*State v. Newton*, 2015 WL 1543386, at **1-3.

The petitioner then filed a motion seeking a new trial. The Tennessee Court of Criminal Appeals recalled the testimony presented at the new trial hearing as follows:

At the motion for new trial hearing, the defendant raised only the issue of ineffective assistance of counsel, and trial counsel testified.

Trial counsel testified that, prior to trial, he was aware that the State had DNA evidence identifying the defendant as the perpetrator of the rape of the victim. He stated that he hired an expert to attempt to refute the testimony of the State's DNA expert and that his expert was unable to provide an opinion that would refute that of the State. He said that he had several discussions prior to trial about whether the defendant would testify at trial. Trial counsel informed the defendant that if he testified at trial, a consent defense would be the only plausible defense to the

charge, in light of the State's DNA evidence. Trial counsel believed that if the defendant were to testify that he did not commit the crime, the testimony would have been unhelpful because it would have been inconsistent with the State's DNA findings.

Trial counsel met with the defendant "in person at least eight times" and spoke with him numerous times on the telephone. Trial counsel testified that the "defense shifted weekly from not there, to it was consensual, to even she attacked him." A week before the trial, after speaking with the defendant, trial counsel had established that their trial strategy would be to assert a defense of consent. Trial counsel prepared a potential cross-examination of the victim to use when employing the consent defense. However, on the day of trial, the defense "shifted to I didn't do it again." The defendant wanted trial counsel to argue that he was not at the scene of the crime, despite the DNA evidence, and he informed trial counsel that he wished to testify.

When trial counsel told the jury that the defendant would testify, he did so after the defendant informed him that he would testify. Trial counsel anticipated that the defendant would testify that he was not present at the scene of the crime and did not rape the victim. He agreed that such testimony would be inconsistent with the scientific proof offered in the case. Trial counsel stated that he attempted to maintain a defense that was consistent with his client's desires but that "every case [was] different." Trial counsel said that on the day of the trial, the defendant "insisted that he did not do it, and—but he still wanted to testify[.]" As a result, trial counsel's strategy was to abandon the consent defense and adopt the theory that the defendant was not the person who raped the victim.

Trial counsel testified that he informed the defendant of his belief that the strategy of claiming that he did not rape the victim "was not the best strategy to pursue[.]" The defendant disagreed, and trial counsel continued with the defense of mistaken identity because the defendant would not adopt a defense of consent.

Trial counsel testified that his biggest obstacle as counsel was "getting [the defendant] to agree on any defense consistently[.]" He stated that the defendant decided not to take the stand after hearing the State's proof and that trial counsel believed this was a smart decision. Trial counsel agreed that if the defendant testified that the encounter was consensual, it would have been inconsistent with the statement that he gave to Detective Carrigan. He further agreed that the proof showed that the defendant did not take the victim where she wished to go and that she jumped out of the taxi cab in a deserted area. He confirmed that the victim's behavior was not consistent with the behavior of a person who had engaged in consensual sex. Trial counsel testified that because the victim "was such a strong witness[,]" he was unsure how successful it would have been to raise a defense of consent.

During closing arguments, the trial court asked defense counsel the following:

Are you creating a new defense for every defendant that comes down the line because he tells his lawyer I insist that you get up and tell this jury that I'm going to testify, and then he says I'm not going to testify so I'm entitled to a new trial because my lawyer said that I was going to testify and I didn't? Now what is to prevent every defendant that ever walks into this courtroom from doing that?
....

If your client tells you I want you to tell that jury that I'm going to testify because I am going to testify, are you telling me that you wouldn't stand up here and tell that?
....

You are not going to get up and do what your client asked you to do?
....

Then you are ineffective, are you not?

*State v. Newton*, 2015 WL 1543386, at **3-4.

The trial court denied the motion for new trial, finding that "everything that [trial counsel] did was effective in this matter." *Id.* at *5. On direct appeal, the trial court affirmed the judgment of the trial court. *Id.* at *8.

## B.   Post-Conviction Proceedings

The Tennessee Court of Criminal Appeals summarized the proof adduced at the petitioner's post-conviction evidentiary hearing as follows:

The Petitioner filed a post-conviction petition, alleging various deficiencies at all stages of his representation. In particular, the Petitioner alleged that successor counsel prematurely brought claims of ineffective assistance of counsel, that he should have been called to testify at the motion for a new trial, that his attorneys failed to present an alibi witness, that appellate counsel was deficient in failing to raise various issues, and that he was entitled to relief for cumulative error.

At the hearing, successor counsel testified that he spoke to the Petitioner about the various issues that could be raised on appeal. The Petitioner wanted to pursue an ineffective assistance of counsel claim. Successor counsel testified that he had a lengthy period of time to prepare for the hearing and that he felt he could adequately raise an ineffective assistance of counsel claim on direct appeal because he was able to fully review the record, investigate and present evidence, and essentially treat the hearing on the motion for a new trial as a post-conviction hearing. Successor counsel discussed with the Petitioner whether or not the Petitioner should

testify at the motion hearing, and the Petitioner made the choice not to testify. Successor counsel noted that the primary alleged deficiency was that trial counsel had rashly promised the jury that the Petitioner would testify, and successor counsel did not believe that the Petitioner's testimony would have had any bearing on that subject. The Petitioner never told successor counsel that he had been prevented from testifying at trial, and successor counsel's review of the record revealed that the Petitioner had been thoroughly advised of his rights when he decided not to testify.

Successor counsel testified that the Petitioner continued to assert his innocence throughout his representation but that the Petitioner did so under two inconsistent theories: mistaken identity and consent. He testified that the victim left the bar at around 3:00 a.m. and that there was only a lapse of around forty-five minutes to an hour before she called police to report the crime, making the Petitioner's claim that they had driven to his house, engaged in consensual sex, and driven back toward the Green Hills area improbable.

The Petitioner told successor counsel that Mr. Francis Kobri could give favorable testimony on his behalf, and successor counsel interviewed Mr. Kobri. The motion for a new trial did not allege that trial counsel was deficient in failing to discover Mr. Kobri because the Petitioner did not tell successor counsel about Mr. Kobri until "way later in the process." Successor counsel determined that Mr. Kobri's statements were not credible. Mr. Kobri claimed that he had seen the Petitioner with the victim at around 11:00 p.m. on the night of the rape at the house that Mr. Kobri and the Petitioner shared in another part of town. Evidence at trial had established that the victim was with her friends and her sister at that time and that she first encountered the Petitioner around 3:00 a.m. when a bar employee placed her into his taxi. Furthermore, the statements were inconsistent with the Petitioner's continued claims of mistaken identity.

Mr. Kobri testified at the post-conviction hearing that in November 2009, when the rape occurred, he was living with the Petitioner and generally worked from 4:00 p.m. to 2:00 a.m. He testified that after returning home from work around 3:00 a.m. on the night of the rape, he saw the Petitioner and the victim together at his home. About fifteen minutes later, the Petitioner asked to borrow Mr. Kobri's car, despite the fact that the Petitioner's taxi was at the home. Mr. Kobri acknowledged that he had attended the Petitioner's 2012 trial and sentencing hearing without volunteering this information. He also acknowledged that he had initially stated to successor counsel that he saw the Petitioner with the victim much earlier in the evening. He explained that he initially did not remember the time because years had passed between the 2009 rape and the 2014 hearing on the motion for a new trial but that, in preparation for the 2016 hearing, "[w]hen I tried to remember and I tried to see, that's why I said it can be this time as well."

The Petitioner testified that successor counsel made the decision to pursue the ineffective assistance of counsel claim on direct appeal. The Petitioner asserted that

he told successor counsel that he had wanted to testify at trial and that trial counsel had prevented him from testifying. He claimed that trial counsel told him that he would be able to testify at another stage of the proceeding. The Petitioner did not tell successor counsel that he wanted to testify at the motion hearing but told him that trial counsel's testimony was not accurate.

The Petitioner stated that if he had testified at either the trial or the hearing on the motion for a new trial, he would have maintained that the victim consented to sexual intercourse. He acknowledged having told Detective Carrigan that he had never seen the victim or had sex with her but claimed that he did not "pay[ ] attention" to the victim's photograph because he had never raped anyone in his taxi. According to the Petitioner, the victim did not want to go home when she got into the taxi but wanted to go to his house, which was a ten-to twelve-minute drive, in order "to pass the time." He acknowledged that his testimony at the sentencing hearing was inconsistent with a claim that the victim consented, and he acknowledged that he did not mention Mr. Kobri's anticipated testimony at the sentencing hearing. The Petitioner claimed he told trial counsel to summon Mr. Kobri as a witness.

The post-conviction court denied relief. The post-conviction court found that successor counsel was not ineffective for presenting claims hinged on ineffective assistance of counsel because he was able to adequately prepare for the hearing and to present evidence to support the Petitioner's ineffective assistance of counsel claims.

Likewise, the post-conviction court declined to find that successor counsel was ineffective for not presenting the Petitioner's testimony at the hearing on the motion for a new trial. The post-conviction court credited trial counsel's and successor counsel's testimony that the Petitioner chose not to testify at trial and at the hearing on the motion for a new trial. The court found that the Petitioner's proffered testimony that he was prevented from testifying at trial would have contradicted his sworn statements made pursuant to *Momon v. State*, 18 S.W.3d 152, 162 (Tenn. 1999), *on reh'g* (Mar. 30, 2000), and would not have led to a different result if they had been introduced at the hearing on the motion for a new trial. The post-conviction court found that the Petitioner urged trial counsel to pursue a defense of mistaken identity and not consent and that the Petitioner's claims regarding consent were simply not credible. The post-conviction court found that successor counsel was not deficient in refusing to present the testimony of Mr. Kobri because elements of Mr. Kobri's testimony were vague, inconsistent, and "ma[de] little sense," and because the post-conviction court credited trial counsel's and successor counsel's testimony that the Petitioner's theory of his alleged innocence was constantly changing.

The post-conviction court found that there was no prejudice in appellate counsel's failure to raise sufficiency of the evidence or sentencing on appeal because the issues did not have merit. The post-conviction court found that trial counsel's closing argument was a matter of strategy and accordingly concluded that there was

no prejudice arising from appellate counsel's failure to cite to case law regarding any errors in closing argument. The post-conviction court denied relief.

*Newton*, 2017 WL 5901032, at **3-5.  The appellate court affirmed the judgment of the post-conviction court.  *Id*. at *11.

## III.    Standard of Review

The petition in this case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). The AEDPA was enacted "to reduce delays in the execution of state and federal criminal sentences . . . and to further the principles of comity, finality, and federalism." *Woodford v. Garceau*, 538 U.S. 202, 206 (2003) (internal citations and quotation marks omitted). As the Supreme Court explained, the AEDPA "recognizes a foundational principle of our federal system: State courts are adequate forums for the vindication of federal rights." *Burt v. Titlow*, 571 U.S. 12, 19 (2013).  The AEDPA, therefore, "erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." *Id*.

One of the AEDPA's most significant limitations on the federal courts' authority to issue writs of habeas corpus is found in 28 U.S .C. § 2254(d).  Under the AEDPA, the court may grant a writ of habeas corpus on a claim that was adjudicated on the merits in state court if that adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 405 (2000).

The state court's factual findings are presumed to be correct, and they can be contravened only if the petitioner can show by clear and convincing evidence that the state court's factual

findings were erroneous. 28 U.S.C. § 2254(e)(1). State-court factual findings are "only unreasonable where they are 'rebutted by clear and convincing evidence' and do not have support in the record." *Moritz v. Woo*ds, 692 Fed. App'x 249, 254 (6th Cir. 2017) (quoting *Pouncy v. Palmer*, 846 F.3d 144, 158 (6th Cir. 2017) (internal quotation marks omitted)). As the Supreme Court has advised, "[t]he question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) (citing *Williams*, 529 U.S. at 410). Review under § 2254(d) (1) "is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 182 (2011).

"Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b), thereby giving the State the 'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (citations omitted). "To provide the State with the necessary 'opportunity,' the prisoner must 'fairly present' his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim." *Id.* (citation omitted); *Gray v. Netherland*, 518 U.S. 152, 162–63 (1996) (the substance of the claim must have been presented as a federal constitutional claim). This rule has been interpreted by the Supreme Court as one of total exhaustion. *Rose v. Lundy*, 455 U.S. 509, 522 (1982). Thus, each and every claim set forth in the federal habeas corpus petition must have been presented to the state appellate court. *See Picard v. Connor*, 404 U.S. 270, 275 (1971); *see also Pillette v. Foltz*, 824 F.2d 494, 496 (6th Cir. 1987) (exhaustion "generally entails fairly presenting the legal and factual substance of every claim to all levels of state court review").

Claims which are not exhausted are procedurally defaulted and "ordinarily may not be considered by a federal court on habeas review." *Alley v. Bell*, 307 F.3d 380, 388 (6th Cir. 2002). Procedural default also occurs where the state court "actually . . . relie[s] on [a state] procedural bar as an independent basis for its disposition of the case." *Caldwell v. Mississippi*, 472 U.S. 320, 327 (1985). To cause a procedural default, the state court's ruling must "rest[ ] on a state law ground that is independent of the federal question and adequate to support the judgment." *Coleman*, 501 U.S. at 729.

"In order to gain consideration of a claim that is procedurally defaulted, a petitioner must demonstrate cause and prejudice for the failure, or that a miscarriage of justice will result from the lack of review." *Alley,* 307 F.3d at 386. The burden of showing cause and prejudice to excuse defaulted claims is on the habeas petitioner. *Lucas v. O'Dea*, 179 F.3d 412, 418 (6th Cir. 1999) (citing *Coleman v. Thompson*, 501 U.S. 722, 754 (1991)). A petitioner may establish cause by "show[ing] that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). Objective impediments include an unavailable claim or interference by officials that made compliance impracticable. *Id.* Constitutionally ineffective assistance of trial or appellate counsel may constitute cause. *Murray*, 477 U.S. at 488–89. Generally, however, if a petitioner asserts ineffective assistance of counsel as cause for a default, that ineffective assistance claim must itself have been presented to the state courts as an independent claim before it may be used to establish cause. *Id*. If the ineffective assistance claim is not presented to the state courts in the manner that state law requires, that claim is itself procedurally defaulted and can only be used as cause for the underlying defaulted claim if the petitioner demonstrates cause and prejudice with respect to the ineffective assistance claim. *Edwards v. Carpenter*, 529 U.S. 446, 452–53 (2000).

Petitioners in Tennessee also can establish "cause" to excuse the procedural default of a substantial claim of ineffective assistance by demonstrating the ineffective assistance of post-conviction counsel in failing to raise the claim in initial review post-conviction proceedings. *See Martinez v. Ryan*, 566 U.S. 1, 5-6 (2012) (creating an exception to *Coleman* where state law prohibits ineffective assistance claims on direct appeal); *Trevino v. Thaler*, 569 U.S. 413, 429 (2013) (extending *Martinez* to states with procedural frameworks that make meaningful opportunity to raise ineffective assistance claim on direct appeal unlikely); *Sutton v. Carpenter*, 745 F.3d 787, 792 (6th Cir. 2014) (holding that *Martinez* and *Trevino* apply in Tennessee). The Supreme Court's creation in *Martinez* of a narrow exception to the procedural default bar stemmed from the recognition, "as an equitable matter, that the initial-review collateral proceeding, if undertaken without counsel or with ineffective counsel, may not have been sufficient to ensure that proper consideration was given to a substantial claim." *Martinez*, 566 U.S. at 13. In other words, *Martinez* requires that the ineffective assistance of post-conviction counsel occur during the "initial-review collateral proceeding," and that "the underlying ineffective-assistance-of-trial-counsel claim [be] a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit." *See id*. at 13-15. Importantly, *Martinez* did not dispense with the "actual prejudice" prong of the standard for overcoming procedural default first articulated by the Supreme Court in *Coleman*.

To establish prejudice, a petitioner must demonstrate that the constitutional error "worked to his <u>actual</u> and substantial disadvantage." *Perkins v. LeCureux*, 58 F.3d 214, 219 (6th Cir. 1995) (quoting *United States v. Frady*, 456 U.S. 152, 170 (1982) (emphasis in original)). "When a petitioner fails to establish cause to excuse a procedural default, a court does not need to address the issue of prejudice." *Simpson v. Jones*, 238 F.3d 399, 409 (6th Cir. 2000) (citations omitted).

Because the cause and prejudice standard is not a perfect safeguard against fundamental miscarriages of justice, the Supreme Court also has recognized a narrow exception to the cause requirement where a constitutional violation has "probably resulted" in the conviction of one who is "actually innocent" of the substantive offense. *Dretke v. Haley*, 541 U.S. 386, 392 (2004) (citing *Murray*, 477 U.S. at 496).

## IV.    Analysis

With these principles in mind, the court will turn to the examination of the seven claims raised in Newton's petition for habeas relief, six of which are ineffective assistance of counsel claims.

### A.    Ineffective Assistance of Counsel Claims

The Sixth Amendment to the United States Constitution, as applied to the states through the Fourteenth Amendment, guarantees the right of a person accused of a crime to the effective assistance of counsel.   To prevail on a claim of ineffective assistance of counsel, a petitioner must show (1) deficient performance of counsel and (2) prejudice to the defendant.  *See Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Bell v. Cone*, 535 U.S. 685, 694-95 (2002). Trial counsel's performance is deficient when it falls below an objective standard of reasonableness. *See Strickland*, 466 U.S. at 686-87; *Combs v. Coyle*, 205 F.3d 269, 278 (6th Cir. 2000), *cert. denied*, 531 U.S. 1035 (2000).   In assessing performance, "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Strickland*, 466 U.S. at 690-91.  Reasonable attorneys may disagree on the appropriate strategy for defending a client. *Bigelow v. Williams*, 367 F.3d 562, 570 (6th Cir. 2004).  The prejudice element requires a

petitioner to show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

A court hearing an ineffective assistance of counsel claim must consider the totality of the evidence. *Strickland*, 466 U.S. at 695. "The determinative issue is not whether petitioner's counsel was ineffective but whether he was so thoroughly ineffective that defeat was 'snatched from the jaws of victory.'" *West v. Seabold*, 73 F.3d 81, 84 (6th Cir. 1996) (quoting *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992) (en banc)). "Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." *Strickland*, 466 U.S. at 689.

As discussed above, federal habeas relief may not be granted under 28 U.S.C. § 2254 unless the petitioner shows that the earlier state court's decision "was contrary to" federal law then clearly established in the holdings of the United States Supreme Court; that it "involved an unreasonable application of" such law; or that it "was based on an unreasonable determination of the facts" in light of the record before the state court. 28 U.S.C. § 2254(d)(1),(2). Thus, when a claim of ineffective assistance of counsel is raised in a federal habeas petition, such as here, the question to be resolved is not whether the petitioner's counsel was ineffective. Rather, "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable." *Harrington v. Richter*, 562 U.S. 86, 101 (2011). As the Supreme Court clarified in *Harrington*:

> This is different from asking whether defense counsel's performance fell below *Strickland's* standard. Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a *Strickland* claim on direct review of a criminal conviction in a United States district court. Under

AEDPA, though, it is a necessary premise that the two questions are different. For purposes of § 2254(d)(1), an unreasonable application of federal law is different from an incorrect application of federal law. A state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself.

*Harrington*, 562 U.S. at 101 (internal quotation marks and citation omitted).

### 1. Successor counsel failed to call the defendant to testify at the motion for new trial hearing

In his first sub-claim of ineffective assistance of counsel, the petitioner alleges that successor counsel was constitutionally ineffective because he failed to call the petitioner to testify at the motion for new trial hearing. (Doc. No. 1 at 5). According to the petitioner, his testimony would have established that trial counsel performed deficiently by preventing him from testifying at trial. (*Id.*)

The petitioner raised this claim in his post-conviction petition and on appeal of the denial of his petition. *Newton*, 2017 WL 5901032, at *8. At the petitioner's post-conviction hearing, he testified that he had told successor counsel that he had wanted to testify at trial and that trial counsel had prevented him from testifying. *Id.* at *4. He claimed that trial counsel told him that he would be able to testify at another stage of the proceeding. The petitioner testified that he did not tell successor counsel that he wanted to testify at the motion hearing but told him that trial counsel's testimony was not accurate. *Id.*

In evaluating this claim, the post-conviction court credited trial counsel's and successor counsel's testimony that the petitioner chose not to testify at trial and at the hearing on the motion for a new trial. *Id.* The court noted that the petitioner's testimony, if given, that he was prevented from testifying at trial would have contradicted his sworn statements that he was choosing not to testify. *Id.* The court found that the petitioner had insisted to trial counsel that "it was a case of mistaken identity" and that the evidence undermined a defense of consent. *Id.* In denying relief,

the court determined that the petitioner had made a "knowing and voluntary choice" not to testify both at the trial and at the hearing on the motion for a new trial. *Id.*

The Tennessee Court of Criminal Appeals began its analysis of the petitioner's ineffective assistance of counsel claims by setting forth the proper legal standard for those claims. *Id.* at **5-6. Applying *Strickland,* the court first noted that it was bound by the post-conviction court's credibility determinations, so long as the evidence did not preponderate against them. *Id.* at *8. The court determined that the evidence in the record supported the post-conviction court's conclusion that successor counsel's performance was not deficient, agreeing that Petitioner made "a knowing and voluntary choice not to testify both at trial and at the hearing on the motion for new trial." *Id.* The state appellate court also agreed with the post-conviction court's finding that the petitioner had not established prejudice because his testimony at the hearing would not have established that he was prevented from testifying at trial or that consent would have been a reasonable defense. *Id.*

These findings are not unreasonable. The evidence shows that the petitioner elected not to testify at the motion for new trial hearing; therefore, he cannot show that counsel was deficient in failing to call him to testify. Further, the petitioner's testimony at the hearing would not have established that he was prevented from testifying at trial or that consent would have been a reasonable defense; thus, the petitioner cannot establish prejudice as a result of successor counsel's failure to call him to testify to these matters. Consequently, the court finds that the petitioner has not shown that he is entitled to relief on this claim because the appellate court's determination was not contrary to *Strickland*. Neither was the appellate court's ineffective assistance determination based on an unreasonable determination of the facts or an unreasonable applicable of *Strickland's* standards to those facts. Further, the state court's determinations are entitled to a presumption of

correctness in the absence of clear and convincing evidence to the contrary, *see* 28 U.S.C. § 2254(e)(1), which the petitioner has not submitted. Claim A(1) is without merit and will be dismissed.

### 2. Trial and successor counsel failed to interview and/or call material witnesses to testify

Next, the petitioner alleges that trial counsel and successor counsel were ineffective for failing to interview and/or call material witnesses at trial and at the motion for a new trial hearing. (Doc. No. 1 at 7). The petitioner does not specify which witnesses or what information these witnesses would have provided. (*Id*.)

The petitioner raised this claim on post-conviction appeal, specifically arguing that trial counsel and successor counsel were ineffective for failing to uncover and present the testimony of one witness, Francis Kobri. *Newton*, 2017 WL 5901032, at *8. The claim presented by the petitioner now is a different, broader claim. This new claim references failure to interview and call an unnamed, unspecified number of witnesses. However, "[a] constitutional claim presented to the federal courts that does not rest on the same theory as was presented to the state courts is procedurally defaulted." *Wong v. Woney*, 142 F.3d 313, 321-22 (6th Cir. 1998).

Because the petitioner has never fully and fairly presented this new claim to the state courts, and a state procedural rule prohibits the state court from extending further consideration to the claim, the claim is deemed exhausted (since there is no "available" state remedy) but procedurally defaulted from federal habeas review. *See Coleman*, 501 U.S. at 752-53. The petitioner, therefore, has waived his claim for purposes of federal habeas corpus review unless he establishes cause for the default and actual prejudice as a result of the alleged errors. The petitioner does not even argue that he can establish cause and prejudice or make a showing of a fundamental miscarriage of justice. Therefore, the court finds that the petitioner has procedurally defaulted this claim.

As to the petitioner's claim that trial counsel was ineffective for failing to investigate and present the testimony of Mr. Kobri, the Tennessee Court of Criminal Appeals found that the petitioner waived this claim under Tennessee Code Annotated § 40-30-106(g) because he failed to present it to the post-conviction court. *Newton*, 2017 WL 5901032, at *8. Further, because the petitioner had brought an ineffective assistance claim against trial counsel on direct appeal, those claims could not be relitigated in a post-conviction proceeding, "even though the petitioner may not have made the same allegations on direct appeal that he now makes in his post-conviction petition." *Id.* (citations omitted). Having applied the waiver rule, the state appellate court did not reach the merits of the claim. *Id.*

The Tennessee waiver rule, Tenn. Code Ann. § 40-30-106(g), constitutes an adequate and independent state procedural ground for denying relief. *See Coe v. Bell,* 161 F.3d 320, 329-331 (6th Cir. 1998) (holding that court was unable to reach merits of Coe's malice jury instructions claim because claim was procedurally barred due to Coe having waived claim by failing to raise it at trial, on direct appeal, or in his first state post-conviction motion). Thus, federal habeas review of the claim is barred unless the petitioner can demonstrate that cause and prejudice will excuse the procedural default or that failure to consider the claim will result in a fundamental miscarriage of justice. *See Harris*, 489 U.S. at 262; *Coe,* 161 F.3d at 329-30. As with his other procedurally defaulted claim, the petitioner makes no attempt to demonstrate cause and prejudice to excuse his procedural default of this claim. The claim is procedurally defaulted and will be dismissed.

As to the petitioner's exhausted claim that successor counsel was ineffective for failing to investigate and present the testimony of Mr. Kobri, the Tennessee Court of Criminal Appeals agreed with the post-conviction court that Mr. Kobri's version of the events "fundamentally lacked credibility." *Newton*, 2017 WL 5901032, at *9. Mr. Kobri testified that he saw Petitioner and the

victim together at 11:00 p.m.  *Id*. This statement was inconsistent with the timeline of events confirmed by all the other evidence at trial, which was that the victim was with friends until 3:00 a.m. when the victim got in the taxi.  *Id*.  Two years later, at the post-conviction hearing, Mr. Kobri's version of the events changed; he "suddenly recalled" that he had seen the victim and the petitioner, whose trial he attended, at 3:00 a.m. rather than 11:00 p.m. as he previously stated.  *Id*.

The record supports the state courts' findings that Mr. Kobri's testimony was untruthful and that successor counsel made a strategic decision not to present testimony that lacked credibility.  It is a "longstanding and sound principle that matters of trial strategy are left to counsel's discretion." *Dixon v. Houk*, 737 F.3d 1003, 1012 (6th Cir. 2013).  In order to fairly assess an attorney's performance, "every effort [must] be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at that time." *Strickland*, 466 U.S. at 689.  "[S]trategic choices made after a thorough investigation of the law and facts relevant to plausible options are virtually unchallengeable."  *Id*. at 690.  In addition, Mr. Kobri's testimony was inconsistent with the petitioner's claim of mistaken identity and the prosecution's timeline of events.  As a result, the petitioner cannot demonstrate that successor counsel's performance was deficient by failing to present the testimony of Mr. Kobri.

The court finds that the petitioner has not shown that he is entitled to relief on this claim because the appellate court's determination was not contrary to *Strickland*.  Neither was the appellate court's ineffective assistance determination based on an unreasonable determination of the facts or an unreasonable applicable of *Strickland's* standards to those facts.  Further, the state court's determinations are entitled to a presumption of correctness in the absence of clear and

convincing evidence to the contrary, *see* 28 U.S.C. § 2254(e)(1), which the petitioner has not submitted. Claim A(2) is without merit and will be dismissed.

### 3. Successor counsel raised the claim of ineffective assistance claims at the motion for new trial hearing and on direct appeal

Third, the petitioner contends that successor counsel was deficient by raising the ineffective assistance of counsel claim at the motion for new trial hearing and on direct appeal instead of waiting to raise the claim for the first time in a petition for post-conviction relief. (Doc. No. 1 at 8).

The petitioner raised this claim in his petition for post-conviction relief. The post-conviction court found that successor counsel had ample opportunity to review the record, investigate allegations of deficient performance, investigate potential witnesses, and call witnesses to present evidence in support of his ineffective assistance claim. *Newton*, 2017 WL 5901032, at *7. Because successor counsel was able to adequately prepare for the hearing and to present evidence to support the petitioner's ineffective assistance of counsel claims, the post-conviction court found that successor counsel had not provided ineffective assistance of counsel in raising the ineffective assistance claims prior to post-conviction proceedings. *Id.*

On appeal, the petitioner argued that successor counsel's representation was deficient because he prematurely raised ineffective assistance claims and doing so was "fraught with peril." *Id.* The petitioner also argued that, because successor counsel called trial counsel to testify, he was unable to ask trial counsel leading questions on cross-examination. *Id.*

In reviewing this claim, the Tennessee Court of Criminal Appeals observed that, indeed, raising a claim of ineffective assistance of counsel on direct appeal is "fraught with peril." *Id.* (citing *Thompson v. State*, 958 S.W.2d 156, 161 (Tenn. Crim. App. 1997). That is because, the court explained, when the issue is raised on direct appeal, appellants risk having the issue resolved

without the opportunity to prove their allegations in an evidentiary hearing. *See id.* (citing *Thompson*, 958 S.W.2d at 162). In addition, once a claim of ineffective assistance of trial counsel has been raised, the issue will be considered previously determined in a subsequent post-conviction action. *Id.* (citing Tenn. Code Ann. § 40-30-106(h)).

With regard to the petitioner's claim that he was denied the opportunity to ask trial counsel leading questions on cross-examination, the Tennessee Court of Criminal Appeals found that this claim was waived because the petitioner had failed to provide argument or citations in his brief. *Id.* at *7 (citing Tenn. Crim. Ct. App. R. 10(b)). Having applied the waiver rule, the state appellate court did not reach the merits of the claim. *Id.* The application of the waiver rule constitutes an adequate and independent state procedural ground for denying relief. *See Coe,* 161 F.3d 320, 329-331. Thus, federal habeas review of the claim is barred unless the petitioner can demonstrate that cause and prejudice will excuse the procedural default or that failure to consider the claim will result in a fundamental miscarriage of justice. *See Harris*, 489 U.S. at 262; *Coe,* 161 F.3d at 329-30. Here, the petitioner has not so demonstrated. Thus, the claim is procedurally defaulted and will be not be considered by this court.

With regard to the petitioner's exhausted claim that successor counsel was ineffective in raising ineffective assistance of trial counsel claims prior to post-conviction review, the Tennessee Court of Criminal Appeals agreed with the post-conviction court that the record established that successor counsel had ample opportunity to review the record, investigate allegations of deficient performance, investigate potential witnesses, and call witnesses to present evidence in support of his ineffective assistance claim. *Id.* at *7. The Tennessee Court of Criminal Appeals found that successor counsel's "mere act of raising the claims prior to post-conviction" was not deficient or prejudicial. *Id.*

The appellate court did not unreasonably apply *Strickland* when it denied the petitioner relief on this claim. Successor counsel made a strategic decision to raise the claims when he did. *Strickland*, 466 U.S. at 690. Nevertheless, even if successor counsel's performance had been deficient, the petitioner has not established prejudice. As the Tennessee Court of Criminal Appeals noted, the petitioner makes no concrete allegations regarding how raising the issues on direct appeal deprived him of a meaningful opportunity to present his claims. Neither does the petitioner point to a way in which waiting to raise the ineffective assistance claim at post-conviction review would have resulted in a reasonable probability of a different outcome. The Sixth Circuit has instructed that when "one is left with pure speculation on whether the outcome of [the criminal proceeding] could have been any different, [there is] an insufficient basis for a successful claim of prejudice." *Baze v. Parker*, 371, F.3d 310, 322 (6th Cir.2004), *cert. denied*, 544 U.S. 931 (2005).

The court finds that the appellate court's decision neither contradicted nor unreasonably applied *Strickland* under these circumstances and was not based on an unreasonable determination of the established facts. Claim A(3) lacks merit and will be dismissed.

### 4. Appellate counsel's failure to raise sufficiency of evidence claim

In the petitioner's fourth sub-claim of ineffective assistance of counsel, the petitioner contends that appellate counsel's failure to raise a sufficiency of evidence claim on direct appeal constituted ineffective assistance of counsel. (Doc. No. 1 at 10).

The petitioner raised this claim in his post-conviction petition. At his post-conviction hearing, however, the petitioner failed to present any evidence or argument that the proof at trial failed to establish any particular element of the crime. *Newton*, 2017 WL 5901032, at *9. The court found that there was no prejudice because the evidence was sufficient to sustain the verdict. *Id.*

On appeal of the denial of post-conviction relief, the Tennessee Court of Criminal Appeals affirmed, finding that,

> [c]onsidering that the evidence was supported by the overwhelming evidence that the victim was raped, that DNA evidence linked the Petitioner to the rape, that the victim was able to identify the Petitioner, and that the Petitioner's taxi number matched that given by a witness, appellate counsel's strategic decision not raise the issue was not deficient or prejudicial.

*Id.*

The appellate court did not unreasonably apply *Strickland* when it denied the petitioner relief on this claim. "[T]he Constitution guarantees criminal defendants only a fair trial and a competent attorney. It does not insure that defense counsel will recognize and raise every conceivable constitutional claim." *Engle v. Isaac*, 456 U.S. 107, 134 (1982); *Caver v. Straub*, 349 F.3d 340, 348–49 (6th Cir. 2003) (explaining that the *Strickland* analysis "does not require an attorney to raise every non-frivolous issue on appeal"). Consequently, ineffective assistance of appellate counsel claims are governed by the same *Strickland* standard as claims of ineffective assistance of trial counsel. *See Smith v. Robbins*, 528 U.S. 259, 285 (2000). To prevail, a petitioner must show that counsel's performance was deficient and that he was prejudiced as a result. *Strickland*, 466 U.S. 668, 687. To show prejudice, the petitioner must demonstrate that, but for counsel's poor performance, "there is a reasonable probability" the result of his appeal would have been different. *Id*. at 694. "Appellate counsel cannot be found to be ineffective for 'failure to raise an issue that lacks merit.'" *Shaneberger v. Jones*, 615 F.3d 448, 452 (6th Cir. 2010) (quoting *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001)).

Here, where the jury was presented with overwhelming evidence that the victim was raped, the DNA linked the petitioner to the rape, the victim identified the petitioner as the rapist, and the petitioner's taxi number matched the number given by a witness, a sufficiency of evidence claim

would not have provided appellate relief if counsel had raised the claim on direct appeal. Appellate counsel made a strategic decision not to raise this claim on direct appeal, and this choice was neither deficient nor prejudicial. The court finds that the decision of the Tennessee Court of Criminal Appeals neither contradicted nor unreasonably applied *Strickland* under these circumstances and was not based on an unreasonable determination of the established facts. Claim A(4) lacks merit and will be dismissed.

### 5. Appellate counsel's failure to cite authority in his closing argument

In his fifth sub-claim of ineffective assistance of counsel, the petitioner takes issue with appellate counsel's failure to cite legal authority in support of his argument that trial counsel made improper concessions during his closing argument. (Doc. No. 1 at 15).

On direct appeal, appellate counsel argued that it was unreasonable for trial counsel to concede in closing argument that there was a rape and there was no consent. *Newton*, 2015 WL 1543386, at *8. Appellate counsel also argued that trial counsel's statement that the case "would have been a loser" absent the DNA evidence was constitutionally ineffective representation. *Id*. The Tennessee Court of Criminal Appeals concluded that these issues were waived because the petitioner had failed to provide any argument or citations of authority to support the claim for relief. *Newton*, 2015 WL 1543386, at *8.

When the petitioner raised this claim on post-conviction relief, the post-conviction court found that trial counsel's closing argument was a strategic choice and that there was no prejudice from failure to brief the issue. *Newton*, 2017 WL 5901032, at *10.

In reviewing the denial of this claim on post-conviction appeal, the Tennessee Court of Criminal Appeals made two initial observations: (1) the petitioner had told trial counsel that he intended to testify that he was not the perpetrator of the crime and this was a case of mistaken

identity and (2) trial counsel had argued in closing that the victim has been raped but that someone else was the perpetrator, consistent with the theory of the case that the petitioner had selected. *Id*. The Tennessee Court of Criminal Appeals ultimately denied relief, explaining:

> [t]he facts of the matter are that the State's evidence was overwhelming and that trial counsel did not have a rational closing argument to present to the jury. The mistaken identity defense was contradicted by DNA evidence, by the victim's identification, and by the bar employee's identification of the taxi's number. The consent defense was not credible because it was belied by the Petitioner's own statement that he had never seen the victim and because the victim was able to escape and report the crime immediately after its occurrence. Moreover, trial counsel had to select a theory of the case to pursue at the beginning of the trial, at a time when the Petitioner insisted that he would be giving testimony supporting mistaken identity. Trial counsel could not credibly change this strategy for closing argument. The Petitioner has cited to no authority that "counsel's concession strategy was unreasonable." *Florida v. Nixon*, 543 U.S. 175, 189 (2004). Accordingly, he cannot demonstrate any prejudice in appellate counsel's lack of citation to authority in his appellate brief. He is not entitled to relief.

*Id*. at *10.

The Tennessee Court of Criminal Appeals thoroughly analyzed trial counsel's closing argument and determined that trial counsel's choices were strategic and limited due to the petitioner's own choices. Therefore, even if trial counsel's performance were deficient, as the petitioner alleges, the petitioner cannot demonstrate that he was prejudiced by appellate counsel's failure to cite authorities in the brief in support of the argument that trial counsel's closing argument was defective. Counsel cannot be ineffective by failing to raise an argument that is meritless. The appellate court found that the petitioner failed to establish that there was a reasonable probability that, even if appellate counsel had supported her argument with citations, the outcome for the petitioner would have been different. This decision was not contrary to *Strickland*. The appellate court's ineffective assistance determination was not based on an unreasonable determination of the facts or an unreasonable applicable of *Strickland's* standards to those facts. Further, the state court's determinations are entitled to a presumption of correctness

in the absence of clear and convincing evidence to the contrary, *see* 28 U.S.C. § 2254(e)(1), which the petitioner has not submitted.  Claim A(5)  is without merit and will be dismissed.

### 6.    Appellate counsel's failure to raise the issue of sentencing

Finally, the petitioner alleges that he received ineffective assistance of counsel when appellate counsel did not raise the issue of alternative sentencing on direct appeal.  (Doc. No. 1 at 15).  The trial court denied the petitioner probation, noting the petitioner's failure to accept responsibility and his lack of remorse.  *Newton*, 2017 WL 5901032, at *10.

On appeal of the denial of post-conviction relief on this claim, the Tennessee Court of Criminal Appeals found that the trial court's denial of probation  was not an abuse of discretion because the petitioner had not presented any evidence that the trial court's sentencing decision was illogical, based on an incorrect legal standard, or based on a clearly erroneous assessment of proof.  *Id*.  The court further found that appellate counsel made a "reasonable strategic decision to rely on some issues to the exclusion of others on appeal," and the petitioner had not demonstrated deficiency or prejudice.  *Id*.

This decision was not an unreasonable application of federal law.  The record supports the state courts' rejection of this claim.  As noted above, the petitioner does not have a constitutional right to have appellate counsel raise every non-frivolous issue on appeal.  *See Caver*, 349 F.3d 340, 348-49.  Although the petitioner argued that he was eligible for alternative sentencing and that his lack of criminal history and the testimony of his friends and family weighed in favor of an alternative sentence, the petitioner presented no evidence that the trial court's decision was illogical, based on an incorrect legal standard, or based on a clearly erroneous assessment of proof.  *Newton,* 2017 WL 5901032, at *10.  His argument was, as the state court noted, "merely a quarrel with the trial court's weighing of the evidence."  *Id*.  The appellate court determined that the trial

court did not abuse its discretion in sentencing the petitioner, especially considering the petitioner's failure to accept responsibility and lack of remorse. *Id.*

Counsel made a strategic choice in deciding not to raise the issue of alternative sentencing on direct appeal—as the appellate court put it, "to rely on some issues to the exclusion of others on appeal." *Id.* It is a "longstanding and sound principle that matters of trial strategy are left to counsel's discretion." *See Dixon*, 737 F.3d 1003, 1012. Considering the petitioner's failure to accept responsibility and lack of remorse, counsel's strategic decision to forego the issue of alternative sentencing was reasonable, as the state appellate court concluded.

The court finds that the decision of the Tennessee Court of Criminal Appeals was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Furthermore, given the evidence and testimony adduced at trial, the court finds that the state court's decision to reject this claim was not an unreasonable application of the law. This claim, like the petitioner's other ineffective assistance of counsel claims, lacks merit and will be dismissed.

## B. Cumulative Error

The petitioner also alleges that "the cumulative effect of the errors at trial rose to the level of a violation of the Fourteenth Amendment." (Doc. No. 1 at 15). However, the law of this circuit is that cumulative error claims are not cognizable on habeas review. *See Daniels v. Jackson*, No. 18-1342, 2018 WL 4621942, at *6 (6th Cir. July 17, 2018) (quoting *Williams v. Anderson*, 460 F.3d 789, 816 (6th Cir. 2006)) ("[T]he law of [the Sixth Circuit] is that cumulative error claims are not cognizable on habeas [review] because the Supreme Court has not spoken on this issue."). The petitioner's claim is not cognizable and therefore must be dismissed.

## V. Conclusion

For the reasons set forth herein, the petition filed by Joseph Newton seeking relief under § 2254 will be denied, and this action will be dismissed with prejudice.

Federal Rule of Appellate Procedure 22 provides that an appeal of the denial of a habeas petition may not proceed unless a certificate of appealability (COA) is issued under 28 U.S.C. § 2253. Rule 11 of the Rules Governing § 2254 Cases requires that a district court issue or deny a COA when it enters a final order. A COA may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller–El v. Cockrell,* 537 U.S. 322, 327 (2003). The district court must either issue a COA indicating which issues satisfy the required showing or provide reasons why such a certificate should not issue. 28 U.S.C. § 2253(c)(3); Fed. R. App. P. 22(b).

Because jurists of reason would not disagree with the resolution of the petitioner's claim, the court will deny a COA.

An appropriate order will be entered.

Aleta A. Trauger
United States District Judge